**United States District Court**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| STMICROELECTRONICS, INC. | § | |
| | § | |
| V. | § | CASE NO. 4:05CV44 |
| | § | (Judge Schell/Judge Bush) |
| SANDISK CORPORATION | § | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

STMicroelectronics, Inc.("STM") has filed a Motion for Summary Judgement on Sandisk Corporation's ("Sandisk") Four Affirmative Defenses (Docket #124). Having considered the motion and all responsive pleadings, the Court finds as follows.

## **Standard**

Summary judgment is proper if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The trial court must resolve all reasonable doubts in favor of the party opposing the motion. *Casey Enters, Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981)(citations omitted). The party seeking summary judgment carries the burden of demonstrating that there is no actual dispute as to any material fact in the case. This burden, however, does not require the moving party to produce evidence showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The moving party satisfies its burden by "pointing out to the district court... that there is an absence of evidence to support the nonmoving party's case." *Id.*

Once the moving party has satisfied its burden, the nonmovant must "set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). If the nonmovant fails to set

1

forth specific facts in support of allegations essential to that party's claim and on which that party will bear the burden of proof, then summary judgment will be appropriate. *Celotex*, 477 U.S. at 323. Even if the nonmovant brings forth evidence in support of its allegations, summary judgment will be appropriate "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)(citations omitted). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.*

## Inequitable Conduct

Briefly stated, Sandisk alleges that STM committed inequitable conduct by not disclosing prior art references, which it contends is material. Inequitable conduct occurs when a patent applicant breaches the duty of good faith and candor owed to the Patent Office. *Bruno Indep. Living Aids, Inc. v. Acorn Mobility Servs., Ltd.*, 394 F.3d 1348, 1351 (Fed. Cir. 2005). If information is material to the examination of the patent, it must be disclosed. 37 C.F.R. § 1.56(a). STM contends that there is no duty to conduct a prior art search and no duty to disclose when the information is only cumulative to that already before the examiner. STM contends that the failure to disclose the Toshiba '497 publication and five other cited references was not material. STM contends that the Toshiba '497 was "intermediate literature" and was thus immaterial to the prosecution of the '802 patent. STM further contends that since the US application of the '802 patent benefitted from the April 13, 1984 foreign priority date for the French application, the Toshiba '497 was not prior art with respect to the US application. STM also argues that Sandisk has failed to plead inequitable conduct with particularity.

The heightened pleading requirement applicable to fraud claims applies to a claim for

inequitable conduct before the Patent Office. *Ferguson Beauregard/Logic Controls v. Mega Systems, LLC*, 350 F.3d 1327 (Fed. Cir. 2003). The Court finds that this defense was pled with specificity. In any event, STM raises this point only now, and the Court finds that it has waived any complaint at this late date.

Sandisk alleges that the '497 reference was disclosed in the European patent which had a priority date prior to the French patent. Sandisk claims the following facts mandate a denial of the motion for summary judgment as to inequitable conduct:

- The European examiner identified the Toshiba '497 reference and its counterpart '344 patent in a European search report;

- The Toshiba '497 reference and the counterpart '344 patent claim the benefit of the same filing date–February 22, 1983;

- In the European search report, the European examiner identified the relationship between the Toshiba '497 reference and its U.S. counterpart '344 patent;

- The Toshiba '497 reference and the '344 patent share identical disclosures;

- In the European search report, the examiner identified the Toshiba '497 reference as "particularly relevant if taken alone" to the claims of the '802 patent's European counterpart;

- The claims of the '802 patent's European counterpart application were identical to the claims of the '802 patent;

- Because, like the Toshiba '497 reference, the '344 patent claims the benefit of the February 22, 1983 filing date, the '344 patent's U.S. filing date had to be–and is (February 21, 1984)–within one year of that date;

- The '344 patent is material prior art because (1) the European examiner identified the identical disclosure of the Toshiba '497 reference as "particularly relevant if taken alone," (2) the identical disclosure of the '497 reference ultimately forced STM to amend the claims of the '802 patent's European counterpart application, and (3) the '344 patent forms the basis of one of SanDisk's invalidity arguments;

3

- STM's European patent attorneys, including Michel Guerin, had a duty under 37 C.F.R. § 1.56 to disclose the European search report, as well as the Toshiba '497 reference and '344 patent to the U.S. examiner; and

- Neither the European search report, which identified both the Toshiba '497 reference and the '344 patent, and which identified the Toshiba '497 reference as "particularly relevant if taken alone," nor the Toshiba '497 reference or '344 patent were provided to the U.S. examiner.

(Sandisk Resp. at pgs. 8-9). The Court agrees. STM is not entitled to summary judgment.

## Patent Misuse

Patent misuse is a defense, the genesis of which arises from the doctrine of unclean hands and relates generally to the use of patent rights to obtain or to coerce an unfair advantage. *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1372 (Fed. Cir. 1998). The burden is on Sandisk to show that STM has engaged in activity that has "impermissibly broadened the 'physical or temporal scope' of the patent grant with anticompetitive impact." *Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1001-02 (Fed. Cir. 1986). The mere enforcement of patent rights against infringement is not patent misuse. 35 U.S.C. 271(d).

STM claims that the misuse defense is similar to the inequitable conduct defense in that Sandisk alleges that STM knew of the prior art while attempting to enforce its patent. Sandisk sets forth the following facts which it contends constitute misuse:

- The European examiner rejected EPO application claims identical to the issued '802 patent claims;

- The European examiner rejected the EPO application claims based on a disclosure (the Toshiba '497 reference) identical to the prior art '344 patent;

- The European patent attorneys amended the EPO application claims to overcome the disclosure identical to that of the '344 patent;

- When amending the claims, the European patent attorneys acknowledged that the disclosure "describes the process according to the invention in a case in which the conducting material is polycrystalline silicon;"

- Prior to filing the current lawsuit, STM's attorneys were aware of the '344 patent and how its disclosure caused the EPO claims to be amended; and

- STM is asserting patent claims that it has acknowledged to the EPO examiner are invalid.

(Sandisk Resp. at pgs. 20-21). In effect, Sandisk claims STM was asserting claims it knew to be invalid. The Court finds that there is a fact issue.

## **Laches**

STM, like Sandisk, moves for summary judgment based on laches. The Court has already discussed this issue in Sandisk's motion. In opposition to STM's motion, Sandisk claims that the following issues demonstrate that laches is available as a defense. Sandisk claims that STM's own experts have testified that, by the mid-1990's, more than one-half of the foundries practiced the '802 patent. Public information from Sandisk indicates that it was using the Tower and UMC foundries to make its flash memory products. Sandisk claims that the expert testimony and public information shows that STM should have at least had constructive knowledge that its process was being used. STM also used UMC as a foundry and had a license agreement with UMC for the '802 patent. Moreover, there was public information available on the Tower and UMC websites to demonstrate that some products were made using the '802 process. Sandisk also alleges that the unreasonable delay prejudiced it in that it could have sought other suppliers. The Court declines to grant summary judgment on this issue.

## **Equitable Estoppel**

In *ABB Robotics, Inc. v. GMFanuc Robotics Corp.*, 52 F.3d 1062 (Fed Cir. 1995), the Federal

5

Circuit articulated the three elements of equitable estoppel. First, the patentee, through misleading conduct, must lead the alleged infringer to reasonably infer that he does not intend to enforce the patent against the accused infringer. *Id.* at 1063. Next, the alleged infringer must rely on the patentee's conduct. *Id.* Finally, due to the reliance, the alleged infringer must be materially prejudiced if the patentee is permitted to proceed with his infringement suit. *Id.*

Sandisk claims that at the time of the license negotiations between the companies, STM never mentioned the '802 patent. STM argues that the defense does not apply since Sandisk was unaware of the patent. *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1028 (Fed. Cir. 1992). Some courts have held that the doctrine applies if the infringer did not know of the existence of the patent. *Rosen Entm't Sys., LP v. Icon Enters., Inc*, 359 F. Supp. 2d 902 (C.D. Cal. 2005); *Electromotive Div. of Gen. Motors Corp. v. Transp. Sys. Div. of Gen. Elec. Co.*, 275 F. Supp. 2d 850 (E.D. Mich. 2003). Others arrive at the opposite conclusion and hold that if the infringer is unaware of the patent, the doctrine cannot apply. *Philips Elecs. N. Am. Corp. v. Contec Corp.*, 312 F. Supp. 2d 639 (D. Del. 2004).

The Court finds that in cases where competitors of equal bargaining power meet to discuss mutual licensing, there is a duty of candor. Both parties should lay the cards on the table. If one party, through inaction or silence, fails to advise the other of its patent, aware that the competitor's products may very well infringe its patent, that patentee has a duty to so disclose. Sandisk has preserved a fact issue on this point. The Court notes that STM filed a counterclaim against Motorola in this district on July 18, 2003 for infringement of its '802 patent. *Motorola, Inc. v. STMicroelectronics, N.V.* No. 1:03-CV-0407 (E.D. Tex. dism'd Jan. 1, 2005). Thereafter, according to the declaration of Mark Reiter, STM sent a letter to Sandisk's CEO seeking to initiate mutual

licensing of the parties' patents. (Sandisk Resp., Ex. 16). The April 2004 letter references a number of patents but does not include the '802 patent. The fact that STM was litigating this patent against another competitor prior to the time it sent its letter is a strong and compelling argument for equitable estoppel. Since Sandisk did not file a motion for summary judgment on this point, the Court need not consider the issue any further. It is therefore recommended that STM's Motion for Summary Judgment on Sandisk's Affirmative Defenses be denied in its entirety.

## RECOMMENDATION

Based upon the foregoing, the Court hereby recommends that STM's Motion for Summary Judgement on Sandisk's Four Affirmative Defenses be DENIED.

Within ten (10) days after filing of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C.A. § 636(b)(1)(C).

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

**SIGNED this 12th day of June, 2006.**

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE